
UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE HERNANDEZ, | NO. CV 09-7569-CT |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

## SUMMARY OF PROCEEDINGS

On October 21, 2009, plaintiff, Jose Hernandez ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On January 27, 2010, plaintiff filed a memorandum of points and authorities in support of complaint. On March 29, 2010, the Commissioner filed a brief in opposition.


## SUMMARY OF ADMINISTRATIVE RECORD

1. **Proceedings**

On January 16, 2007, plaintiff filed applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") (TR 160-161, 157-159),[1] alleging disability since November 1, 2005, due to diabetes, high blood pressure, back injury, and insomnia. (TR 193.) The applications were denied initially and upon reconsideration. (TR 66-70, 76-81.)

On November 15, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 82.) On October 14, 2008, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 26-38.) The ALJ also considered vocational expert ("VE") testimony. (TR 39-42.) The hearing was continued for psychological testing. (TR 46.) Accordingly, on February 17, 2009, plaintiff appeared and again testified before the ALJ. (TR 46-47, 54-55.) The ALJ also considered the testimony of a second VE, (TR 56-60), and of two medical experts (TR 47-51, 51-54, 55-56).

On March 6, 2009, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because he remains able to perform a limited range of light work, and that he thus was not eligible for benefits. (TR 13-21.) On May 5, 2009, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 6.) On September 11, 2009, the request was denied. (TR 1-3.) Accordingly, the ALJ's decision stands as the final decision of the

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

Commissioner. Plaintiff subsequently sought judicial review in this court.

2. Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTION

Plaintiff raises only one issue. He contends the ALJ failed to provide legally sufficient reasons to reject his subjective statements.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

DISCUSSION

1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful

3

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2. <u>Issue: Plaintiff's Credibility</u>

In conducting an evaluation of plaintiff's credibility, the ALJ

must make findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [plaintiff's] testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Absent affirmative evidence of malingering, an adverse credibility finding must be based on "clear and convincing reasons." Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ amply met these standards here.

Contrary to plaintiff's assertion, the ALJ set out in detail which of plaintiff's statements he found to be contradicted or unsupported by other evidence of record, specifically identified the evidence he found to undermine plaintiff's testimony, and offered multiple, legally sufficient reasons, supported by substantial evidence of record, for declining to credit plaintiff's statements regarding the extent of his limitations. (See TR 19.)

First, the ALJ found plaintiff was not entirely credible because he testified that he needed special education classes in school but, contradictorily, stated in his disability report that he did not need special education classes and did not indicate that he required special education classes in his interview with the consultative psychological examiner. (Compare TR 47, 53 with TR 198, 391.) In assessing a plaintiff's credibility, the ALJ may use "ordinary techniques" of credibility evaluation, Tonapetyan v. Halter, 242 F.3d 11244, 1147-48 (9th Cir. 2001), and inconsistencies in a plaintiff's statements may, of course, play a role, Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.

1991).

Second, the ALJ found that plaintiff's testimony that he is unable to work because he suffers extreme weakness and "fall[s] asleep constantly" was not only unsupported by medical findings, it was also *contradicted* by plaintiff' self-reporting to his physicians, whose records the ALJ found do not reflect legally significant reports of either extreme fatigue or falling asleep during work hours. (TR 19, 32.) The court has independently reviewed the record, and finds that this conclusion is supported by substantial evidence. (E.g., TR 268, 287-91.) A plaintiff's lack of self-reporting to physicians with regard to a particular limitation alleged before the Commissioner is a legally sufficient reason to reject plaintiff's credibility. See Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (plaintiff who alleged severe neck, shoulder, and back pain asserted she spent 75% of the day lying down due to severe pain, but never reported this restriction to her physicians).

Third, the ALJ found that plaintiff's contentions, such as his allegation that he suffered from excruciating back pain, were not supported by the medical findings. (TR 19.) This is legally permissible, and the court concludes that this finding is supported by substantial evidence of record. Although plaintiff is correct that, once a plaintiff produces objective medical evidence of an underlying impairment that could produce such a symptom, the Commissioner may not reject plaintiff's subjective complaints based *solely* on lack of objective medical evidence corroborating its extent, Bunnell v. Sullivan, 947 F.2d at 345, a lack of medical support for the subjective complaints is still "a relevant factor." Rollins v. Massanari, 261 F.3d

853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Fourth, the ALJ found plaintiff's claim that he is unable to concentrate is belied by his ability to concentrate sufficiently to complete multiple intelligence tests in one sitting (notably, the court observes, without any comment by the examiner suggesting an impaired concentration level), which tests, furthermore, indicated plaintiff is able to perform simple and repetitive tasks on a consistent basis over an eight-hour period. (TR 392-93.) The ALJ is entitled to draw inferences, such as this one, "logically flowing from the evidence." Macri v. Chater, 93 F.3d at 544 (quotation omitted.) The ALJ did not, as plaintiff suggests here, criticize plaintiff for failing to seek more extensive mental health treatment but, rather, specified only that the above inference is not diminished by an allegation that plaintiff received mental health treatment or medication, because he was not doing so. Moreover, substantial evidence of record indicates plaintiff was not prescribed aggressive mental health care, which is a legally sufficient reason for the ALJ to decline to credit plaintiff's statements regarding the extent of any mental impairments. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Finally, the ALJ noted that no medical source opined plaintiff was permanently disabled or unable to work. The ALJ may consider whether the medical opinions support plaintiff's subjective claims in making a credibility determination. See id., 400 F.3d at 680.

Although the ALJ's interpretation of plaintiff's testimony may not be the only reasonable one, if it is supported by substantial evidence "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted). The court

7

concludes the ALJ's findings are supported by substantial evidence and that there is no material legal error here.

## CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Sec'y of Health and Human Servs.</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: 4/12/10

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Jose Hernandez<br>(Claimant) | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On January 8, 2007, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on January 8, 2007. In both applications, the claimant alleged disability beginning November 1, 2005. These claims were denied initially on April 26, 2007. Thereafter, the claimant filed a written request for hearing on November 15, 2007 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on February 17, 2009, in Los Angeles, CA. Also appearing and testifying was Harvey L. Alpern, M.D., an impartial medical expert, David B. Peterson, Ph.D., an impartial medical expert, and Sandra Schneider, an impartial vocational expert. The claimant is represented by Louis Finkelberg, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2011. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from November 1, 2005 through the date of this decision.

**13**

See Next Page



Jose Hernandez                                      Page 2 of 9

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

**14**

See Next Page



Jose Hernandez () Page 3 of 9

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.**

**2. The claimant has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

The claimant's earnings record reveal work activity in 2005, 2006, and 2007 (Exhs. 3D, 5D, 6D, 7D). However, the claimant reported that he last worked as a security guard from July 1995 to November 2004 (Exh. 2E). Further, the claimant testified that he received $37,000.00 "from the government" subsequent to his alleged onset date. The undersigned also notes there are differing reports in the earnings records regarding the claimant's posted earnings in 2005 ($17,706.53 vs. $4,460.01), 2006 ($45,432.96 vs. $.00), and 2007 ($77,304.72 vs. $3,705.72) (Exhs. 3D, 5D, 6D, 7D). The undersigned affords the claimant the benefit of the doubt and finds the claimant has not performed substantial gainful activity since the alleged onset date because the lesser of the earning amounts for each year do not constitute substantial gainful activity if they are spread across the year in which they were earned. The undersigned notes the need for the Agency component responsible for the determination of these matters to perform an investigation regarding the source of these earnings. Accordingly, the undersigned finds no substantial gainful activity and proceeds to the next step in the sequential evaluation process.

**15**

See Next Page



Jose Hernandez (                                    Page 4 of 9

**3. The claimant has the following severe impairments: Obesity, arthritis, and depressive disorder, not otherwise specified (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).**

The claimant has a history of treatment for hypertension, diabetes mellitus, and arthritis (Exh. 1F). The claimant was incarcerated at Metropolitan Corrections in Victorville, CA. While incarcerated, he was treated for high blood pressure, diabetes, and it was noted he had a history of an appendectomy in 1982 (Exh. 2F). In October 2005, an Echocardiogram and a chest x-ray were normal (Exh. 2F/10-11). In November 2005, the claimant tested positive for tuberculosis. Additional diagnoses included hypertension, obesity, diabetes mellititus, type 2, hyperlipidemia, and elevated liver function test (Exh. 2F/8). The claimant consented to a tuberculosis vaccination and it was noted the claimant was compliant with diet and exercise recommendations (Exh. 2F/16, 19, 24, 26). Physical examinations from October 2005 through May 2006 were unremarkable (Exh. 2F/7, 15, 25, 28, 30). The claimant maintained diet and prescription refills at the H. Claude Hudson Comprehensive Health Center from October 2006 through March 2007 (Exhs. 3F, 4F).

On March 29, 2007, the claimant underwent a consultative physical examination by John Sedgh, M.D. (Exh. 5F). Current medications included aspirin, hydrochlorothiazide, benazepril, simvastatin, meformin and flagyl. The claimant is described as morbidly obese and in no acute distress. Musculoskeletal examination revealed slightly decreased lumbar spine range of motion and negative straight leg raise test in the seated position. Upper and lower extremity examination revealed normal flexion, normal range of motion and no deformities or edema was observed. Neurologically, the claimant was intact with good muscle tone, good active motion, normal gait, normal sensory examination, and full strength in all extremities. A radiograph of the lumbar spine revealed mild degenerative disc disease (Exh. 5F/6). Diagnoses included hypertension (blood pressure 130/90), diabetes, and low back arthritis (Exh. 5F/5). A State Agency physician reviewed the evidence on April 13, 2007 and affirmed the functional assessment by Dr. Sedgh (Exhs. 6F/1-6, 7F/1-2).

On January 17, 2008 a note from the Medical Clinic at Weingart revealed the claimant received Cpap and other beneficial treatment for diagnoses of sleep apnea with hypoxemia and nocturia, diabetes, hypertension (well controlled), and dyslipidemia (Exhs. 15F/3, 17F/9). A diabetic foot examination revealed no sign of neuropathy or circulatory changes but it was noted the claimant needed to lose weight (Exh. 17F/6). The claimant was given temporary disability from work from July 2008 through January 18, 2009 (Exh. 17F/7). The claimant also complained of back pain and on September 17, 2008, it was observed that he walked with an antalgic gait (Exhs. 17F/3, 20F/6. From November 2007 the claimant weighed 274 pounds and he was encouraged to lose weight (Exh. 17F/20, 22). By February 2008, the claimant weighed 280 pounds and by October 2008, he weighed 272 pounds (Exh. 17F/2, 15). His back pain was attributed to an old injury (1988) and secondary to his morbid obesity and posture from having gained 100 pounds since the accident (Exh. 20F/3-4). At that time he was diagnosed with sleep apnea, diabetes mellitus, and hypertension.

On November 13, 2008, the claimant underwent a consultative physical examination by Ursula Taylor, M.D. (Exh. 18F). Current medications included aspirin, hydrochlorothiazide, clonidine,

**16**

See Next Page



metformin, vicodin, lipitor, acetaminophen, and methocarbamol. The claimant is described as morbidly obese and in no acute distress. The claimant complained of progressively worse back pain. He denied any shortness of breath, palpitations, nausea or dizziness due to hypertension. He also denied any kidney problems due to diabetes. However, he alleged blurred vision. He was 62.5 inches tall and weighed 264 pounds and he is right hand dominant. Grip strength measured up to 60 pounds on the right and up to 60 pounds on the left. Musculoskeletal examination revealed slightly decreased lumbar spine range of motion and negative straight leg raise test bilaterally in both the seated and supine positions. Neurologically, the claimant was intact with good muscle tone, good active motion, normal gait, normal sensory examination, and full strength in all extremities. Diagnoses included hypertension (blood pressure 120/78), diabetes, low back and left knee pain, with mild deformity noted on both knees (Exh. 18F/4). A State Agency physician reviewed the evidence on April 13, 2007 and affirmed the functional assessment by Dr. Sedgh (Exhs. 6F/1-6, 7F/1-2).

On September 17, 2007, the claimant underwent a complete psychiatric examination by Ernest A. Bagner III, M.D. (Exh. 10F). It was noted the claimant dresses and bathes himself and he gets along with family and friends. He walks 45 minutes each day and uses public transportation to get around. Mental status examination was essentially unremarkable in the areas of reality contact, insight and judgment, abstractions and judgment, memory and concentration, fund of knowledge, intellectual functioning, and thought content. Diagnoses included depressive disorder, not otherwise specified and alcohol abuse in remission. The claimant received a Global Assessment of Functioning (GAF) rating of 72.

On November 13, 2008, the claimant underwent a complete psychiatric examination by Roger A. Izzi, Ph.D. (Exh. 19F). It was noted the claimant dresses and bathes himself and he gets along with family and friends. He walks 45 minutes each day and uses public transportation to get around. Mental status examination was essentially unremarkable in the areas of reality contact, insight and judgment, abstractions and judgment, memory and concentration, fund of knowledge, intellectual functioning, and thought content. Diagnoses included depressive disorder, not otherwise specified and alcohol abuse in remission. The claimant received a Global Assessment of Functioning (GAF) rating of 72.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).**

The medical expert Dr. Alpern testified and I agree, that the claimant's physical impairments singly, and in combination, do not meet or equal an one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). Dr. Alpern opined the claimant's diabetes is well controlled, he has a normal blood pressure, there is no radicular disease component to the claimant's low back condition, and his alleged symptoms of occasional feet numbness and tingling were described as minor and also do not demonstrate the medical criteria to meet or equal a listed impairment.

**17**

See Next Page



Jose Hernandez (████████)    Page 6 of 9

The medical expert Dr. David Peterson also testified and I agree, that the claimant's depressive disorder and borderline intelligence testing results do not singly, and in combination, meet or equal any one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). Dr. Peterson opined that no one diagnosed the claimant as mentally retarded and based on the evidence, the claimant is not functioning in a range that could be considered even mildly retarded. The claimant tested in the normal range on Part A of the Trail-Making Test (Exh. 194/4) and he demonstrated only a mild limitation on Part B of the test. These test results suggested to Dr. Peterson that the claimant's test results were not a true indication of his ability to function mentally if Spanish was the primary language. Accordingly, if Spanish is not the primary language, the claimant would be moderately to markedly impaired in his ability to complete complex tasks but he would have none to mild limitations in social functioning and activities of daily living. Under the "B" Criteria of listing 12.04, Drs. Bagner and Bongiovani also opined the claimant has no limitations of activities of daily living and social functioning, mild limitations in maintaining concentration, persistence or pace, and the claimant has experienced no episodes of decompensation, each of extended duration (Exh. 12F/11). Accordingly, I assign Dr. Peterson's testimony the most weight and find his opinion most favorable to the claimant and fairly consistent with the opinions from Drs. Bagner (a state Agency examining psychiatrist) and Bongiovani, (a State Agency reviewing psychologist), who both opined the claimant's depressive disorder does not meet or equal Listing 12.04 (Exh. 12F/1-14).

5. **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), with an occasional ability to perform the postural functions of work activity (e.g., bending, stooping, balancing, kneeling, crawling, crouching, and reaching) with an ability to perform simple and repetitive type tasks on a sustained basis during an 8-hour work day.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other

See Next Page



EXHIBIT 18


symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Claimant has increased problems with pain, extreme weakness, falling asleep without control or warning, sleep apnea, shortness of breath depression, upset, inability to concentrate

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's testimony regarding an alleged history of special education, this testimony is inconsistent with the claimant's report that he completed the 12th grade without a need for special education classes in a Disability Report and during the psychological examination (Exhs. 3E/7, 19F/2). Further, the claimant reported to the consultative psychologist that he was not receiving mental health care or taking anti-depressant medication (Exh. 19F/2). Despite the lack of medication and mental health care, the claimant was able to concentrate sufficiently to produce valid intelligence test scores, which undermine his complaints of being unable to concentrate. Physical examinations also do not reveal extreme weakness or increased problems with pain. I find the claimant's allegations of excruciating back pain inconsistent with lumbar spine x-ray evidence of only mild degenerative disc disease (Exh. 5F/6) and treatment records which demonstrate a greater ability to function. As testified by the medical expert, a radicular component to the claimant's pain is not evident from diagnostic test results and manual manipulation during physical examinations. Aside from slightly reduced range of motion, palpation along the spine did not produce pain or evidence of spasm (Exh. 5F/3). Straight leg raise test was negative bilaterally in both the seated and supine positions. The claimant's blood pressure was in the normal range and would not contribute to any allegation of fatigue. Cpap treatment for sleep apnea improved his condition. Aside from the efficacy of treatment, medical sources do not chronicle any reports or observations of extreme fatigue or weakness, or the claimant having fallen asleep without warning with any regularity for the undersigned to find the claimant totally credible. Importantly, I find no opinion from a medical source that the claimant is permanently disabled.

As for opinion evidence regarding functional limitations from claimant's mental impairment, I assign the greatest weight to the opinion from Dr. Peterson because his opinion the claimant is able to perform simple and repetitive type tasks on a sustained basis is consistent with psychological test results and the functional assessments from other examining and reviewing medical sources. As indicated above, the medical expert and medical sources in the record do not offer mental status examination findings or psychological test results which vary significantly from the opinion of Dr. Peterson.

From a physical functional standpoint, Dr. Sedgh, a consultative examining physician, opined the claimant could lift and carry 50 pounds occasionally and 25 pounds frequently. He can stand, walk, and sit 6 hours in an 8-hour work day and he has no postural or manipulative limitations (Exh. 5F). I find that Dr. Sedgh's functional assessment does not significantly differ from the

**19**

See Next Page



Jose Hernandez    Page 8 of 9

functional assessment of Dr. Izzi, another consultative examining physician (Exh. 18F) and those of Drs. Alpern and H.M. Estrin, reviewing medical sources (Exh. 6F). However, considering the claimant's impairments in combination and his subjective complaints that I find partially credible, I find the claimant retains the residual functional capacity to perform the full range of light work with the limitations identified by Dr. Peterson. This residual functional capacity is most generous to the claimant and it is consistent with the record as a whole.

6. **The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a Security Guard: (Dictionary of Occupational Titles (DOT) 372.667-038, light exertion, semi-skilled, SVP 3; Auto body painter: DOT 845.381-014, medium, skilled, SVP 6; and Home Attendant: DOT 354.377-014, medium, semi-skilled, SVP 3. The claimant's non-exertional limitations to simple and repetitive type tasks preclude him from performing his past relevant semi-skilled security guard work. Accordingly, the claimant is unable to perform past relevant work. The evidence supports the claimant has worked in these positions during the past 15 years long enough to learn the functions and duties of the jobs.

7. **The claimant was born on June 1, 1964 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

8. **The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

9. **Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

10. **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

**20**

See Next Page



Jose Hernandez  Page 9 of 9

Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform the full range of light work has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at the light exertional level, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as Fast food worker: light exertion, SVP 2, DOT 311.472-010, 57,000 jobs locally and 300,000 jobs nationally; Laundry sorter: light exertion, SVP 2, DOT 361.687-014, 3,000 jobs locally and 81,000 jobs nationally; and Cloth folder: DOT 587-687-014, light exertion, SVP 2, 6500 jobs locally and 52,000 jobs nationally.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

### DECISION

Based on the application for a period of disability and disability insurance benefits filed on January 8, 2007, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on January 8, 2007, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *David J. Agatstein*
_____
David J. Agatstein
Administrative Law Judge

March 6, 2009
_____
Date

21

